# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-2348V
UNPUBLISHED

|  |  |
|---|---|
| MARK STEVENS,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: May 1, 2025 |

*Sean Franks Greenwood*, The Greenwood Law Firm, Houston, TX, for petitioner.

*Tyler King*, U.S. Department of Justice, Washington, DC, for respondent.

**DECISION**[1]

On December 20, 2021, Mark Stevens filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on January 23, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons set forth below, I find that entitlement cannot be established, and therefore the matter is properly dismissed.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**I.     Relevant Procedural History**

Petitioner filed this claim on December 30, 2021. ECF No. 1. Respondent filed a Rule 4(c) Report opposing compensation on November 6, 2023. Respondent's Rule 4(c) Report ("Rule 4"), ECF No. 21. On December 18, 2023, Petitioner filed a motion for a ruling on the record. Petitioner's Motion for a Ruling on the Record Regarding Entitlement to Damages ("Mot."), ECF No. 29. Respondent's reply was filed on February 1, 2024. Response to Petitioner's Motion for a Ruling on the Record ("Resp."), ECF No. 31. Petitioner filed a reply on February 8, 2024. Petitioner's Reply to Respondent's Response to Petitioner's Motion for Ruling on the Record ("Reply"), ECF No. 32. The matter is ripe for resolution.

**II.    Petitioner's Medical Records**

On January 23, 2019, Petitioner received a flu vaccine in his left shoulder. Ex. 1. Petitioner first complained of left arm pain the following month (February 19, 2019). Ex. 2 at 2-4. He reported the pain was in his left upper arm and it "began 2 weeks ago," which if correct would have been in February. *Id.* at 2. At that time, he had full range of motion and normal strength. *Id.* at 3.

On March 5, 2019, Petitioner was examined by orthopedic surgeon. Ex. 3 at 20. The intake forms list January 23, 2019 as the onset of his injury, but also states his symptoms began "~1 week after vaccine." *Id.* at 13-14. The treater also noted that the "only association he has with an injury is that he had a flu shot roughly a week before." *Id.* at 21. He was assessed with left shoulder bursitis and impingement along with arthrosis and tendinitis. *Id.*

Petitioner had an annual physical on March 27, 2019. Ex. 4 at 70. He reported that "he had a flu shot in January… about 4-5 days later he started having left shoulder pain." *Id.* at 72. The record also states that Petitioner "feels the shoulder pain was caused by the flu shot however his Ortho … does not feel this is accurate." *Id.* at 73.

Petitioner saw the orthopedist again on April 3, 2019. An examination of his left shoulder showed reduced strength, and he was assessed with impingement bursitis, arthrosis, tendinitis, and possibly a small thickness anterior cuff tear. Ex. 3 at 10. Surgical repair was recommended, but not possible due to "his life situation." *Id.* Instead, Petitioner wanted to "try some Tramadol for pain relief and continue taking the anti-inflammatories with Mobic and doing the light exercises." *Id.*

Thereafter, Petitioner was seen by medical professionals for various reasons – but not for his alleged shoulder issues. In July 2019, for example, he was seen for medication refills. Ex. 8 at 7. He was also seen by a chiropractor six times for lower back and hip pain in January of 2020. Ex.10 at 7, 19-24.

On March 5, 2020 (now almost a year since his last recorded visit specific to shoulder concerns), Petitioner saw Dr. John Knapp for a follow-up related to changing medication, anxiety, and health maintenance. Ex. 4 at 64. The record states without additional clarification "Mobic- got partial tear in rotator cuff." There is no indication that an examination was performed, or that Petitioner continued to note any ongoing pain.

Petitioner was also seen several times due to a motor vehicle accident on July 27, 2020. Ex. 11 at 14. Petitioner saw Dr. Knapp for an annual exam on August 3, 2020, when he complained of neck, back, and right shoulder pain related to the accident. Ex. 4 at 46-48.  In October of 2020, Petitioner began seeing a pain management specialist due to neck and lower back pain, but there is no mention of left shoulder pain. Ex. 6 at 19, 24.

Petitioner was seen for an annual exam on March 29, 2021. He mentioned his neck and lower back "bother him constantly" but no shoulder problems. Ex. 5 at 75. Petitioner was examined for cervical spondylosis and lumbar radiculitis on June 2, 2021. Ex. 6 at 6. However, there is no mention of should pain at that time.

### III. Affidavit Evidence

Petitioner submitted an affidavit in support of his claim. Ex. 1. He stated that he felt a stabbing pain in his left shoulder the morning after receiving a flu vaccination on January 23, 2019. Ex. 1 at 1-2. Further, he believed the pain would eventually dissipate, but instead it grew over the next weeks. Ex. 1 at 2. Petitioner also stated that he reported ongoing left shoulder pain at his March 5, 2020 general health exam. Ex. 1 at 4.

### IV. Parties' Arguments

Petitioner asserts that he suffered a right SIRVA Table as defined by the Vaccine Injury Table, and that he meets the severity requirement. Mot. at 7-9. Respondent contends that Petitioner has failed to show he is entitled to compensation. Specifically, Respondent argues that Petitioner cannot meet the definition of a SIRVA because there is no record of onset within 48-hours of vaccination, and that he failed to establish his symptoms lasted for more than six months. Resp. at 5-7.

## V. Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury. *See* § 11(c)(1)(A)(B)(D)(E).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### A. Petitioner Does Not Meet the Severity Requirement

A primary issue to be resolved[4] is whether Petitioner has demonstrated that he suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There is no dispute that Petitioner received the flu vaccine on January 23, 2019, and he therefore must demonstrate by preponderant evidence that his residual symptoms continued at least through July 23, 2019 (assuming onset of pain the day of vaccination). *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record establishes that Petitioner's initial treatment occurred between February and April of 2019. Ex. 2 at 2-4; Ex. 3 at 10. There is a subsequent gap of approximately one year without any reference to Petitioner's shoulder. And at that time, the March 5, 2020 record states Petitioner "got partial tear in rotator cuff," but with no further details. Ex. 4 at 64.  Petitioner does not provide an explanation as to why he did not seek treatment after April 2019, or why there is no mention of shoulder problems until March 2020. And he attended medical appointments during this time, but did not describe any ongoing shoulder pain or range of motion issues. *See* Ex. 10 at 19-24 (chiropractor records describing ongoing lower back and hip pain from January of 2020); Ex. 5 at 75 (records from March 29, 2021 describing how his neck and lower back "bother him constantly").

Given the above, I cannot conclude that the record preponderantly establishes Petitioner's injury persisted for the six months required by the Act. Petitioner ceased treatment before the six month "cut off," and then did not mention any shoulder problem for almost a year. And even once his shoulder was mentioned, he only stated "got partial tear in rotator cuff" without any specificity as to the shoulder, if he still experienced pain, or when it began. Nor would a vaccine cause a rotator cuff tear. Such a fact pattern overall preponderates in favor of a finding that any initial vaccine issues had ended before the severity deadline.

---

[4] The record also does not support Table onset, but the claim is properly dismissed in all respects (even with regard to a causation-in-fact claim) for Petitioner's inability to establish severity.

## Conclusion

Because Petitioner has failed to meet the severity requirement set forth in Section 11(c)(1)(D)(i), Petitioner cannot establish entitlement, and therefore I must **DISMISS** his claim in its entirety. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk of Court shall enter judgment in accord with this Decision.[5]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.